IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT DUFFY, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CREDIT CORP SOLUTIONS, INC., | : | No. 21-4684 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                          MARCH 29, 2022

A debt collector sent Robert Duffy a letter stating that he owed $8,000. Insisting that he owed at most $1,100 based on his settlement agreement with a prior lender, Mr. Duffy sued the debt collector for misrepresenting his debt. The debt collector now moves to dismiss Mr. Duffy's complaint, claiming that, as a matter of law, Mr. Duffy owes the full $8,000. But Mr. Duffy has plausibly pled that the debt collector is bound by the prior settlement agreement. The Court thus denies the motion to dismiss in primary part.

### BACKGROUND

Robert Duffy borrowed $30,000 from Lending Club. Two years later, Mr. Duffy and Lending Club entered into a settlement agreement reducing the amount Mr. Duffy had to pay. Though he owed $14,285.24 in total, Mr. Duffy would have to pay just $7,143, so long as he paid $396.83 a month for 18 months. If he failed to follow the terms of the agreement, he would immediately owe the previously calculated full amount of the debt (less payments actually made).

Mr. Duffy made his first eight payments through Global Holdings LLC, an online payment-processing company. He then started paying Lending Club directly using automatic electronic payments. He gave Lending Club his account information, and Lending Club agreed to withdraw the money from his account each month.

1

Lending Club withdrew 15 payments but not the last three. Mr. Duffy did not notice those non-events at the time. Nearly a year later, Lending Club, considering the settlement agreement breached, sold Mr. Duffy's original debt—now valued by Lending Club at $8,332—to Credit Corp Solutions. Credit Corp promptly sent Mr. Duffy a letter stating that that he owed it $8,349.21 plus possible interest. At that point, Mr. Duffy learned that Lending Club had not withdrawn the last three payments.

Mr. Duffy then sued Credit Corp. According to Mr. Duffy, when Credit Corp purchased his debt, it assumed his settlement agreement with Lending Club. Because Lending Club breached the settlement agreement (not him), Mr. Duffy argues, he owes just the three final payments, or $1,190.49. When Credit Corp ignored the prior settlement agreement and sent him a letter stating that he owed the full $8,349.21, Mr. Duffy contends, it misrepresented Mr. Duffy's debt. That misrepresentation, he claims, violated three statutes: the federal Fair Debt Collection Practices Act, Pennsylvania's Fair Credit Extension Uniformity Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law.[1] Credit Corp moves to dismiss all three claims, claiming that they fail as a matter of fact and law. Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

In a complaint, a plaintiff must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Vorchheimer v. Philadelphian Owner's Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018). The Court does not decide whether the plaintiff's story *is* what happened, just whether

---

[1] Mr. Duffy also brought a claim under the Fair Credit Reporting Act but has since dropped it.

it plausibly *could have* happened. *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). In doing so, the Court considers the complaint and documents attached to it or "integral" to it, like a contract in a breach-of-contract claim. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

DISCUSSION

**I.     Mr. Duffy has stated a claim under the Fair Debt Collection Practices Act**

Under the Fair Debt Collection Practices Act (FDCPA), debt collectors may not make a "false representation of … the character, amount, or legal status of any debt" or seek to collect "any amount …. unless such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. §§ 1692e(2)(A), 1692f(1).

Mr. Duffy says that Credit Corp did both: in the letter to Mr. Duffy, Credit Corp represented that he owed it $8,349.21 and sought to collect that amount, when he really owed just $1,190.49 under the settlement agreement.

Credit Corp, on the other hand, asserts that Mr. Duffy violated the settlement agreement when he failed to make the last three payments to Lending Club, thus putting his original debt back in place. In other words, Credit Corp argues that it purchased Mr. Duffy's reverted debt from Lending Club, not his compromised debt under the settlement agreement, meaning that Credit Corp's letter stated correctly that Mr. Duffy owed $8,349.21.

Credit Corp asks the Court to dismiss Mr. Duffy's claim now, before discovery.

It is too early for that.

**A. Mr. Duffy has plausibly pled that Lending Club violated the settlement agreement**

To prove that Mr. Duffy breached the settlement agreement, Credit Corp points to the written contract between Mr. Duffy and Lending Club. This contract is "integral to [and] explicitly relied upon in the complaint," so the Court can consider it on the motion to dismiss. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks

and emphasis omitted). The contract states the Mr. Duffy must make his monthly payments "by way of check." Doc. No. 7-2 ¶ 2. "If [Mr. Duffy] fails to pay the Settled Amount by the terms outlined, the agreement shall be terminated immediately and [Lending Club] shall immediately demand the outstanding amount." *Id.* ¶ 4. As Credit Corp sees it, Mr. Duffy breached the contract when *he* did not ensure the last three payments were made.

Mr. Duffy counters that the parties modified that term of the contract. Though he made the first half of his payments through Global Holdings, Lending Club then pulled the subsequent payments directly from his bank account. This course of performance, Mr. Duffy contends, modified the contract, putting the onus on *Lending Club* to collect the payment each month. *See Agathos v. Starlite Motel*, 977 F.2d 1500, 1509 (3d Cir. 1992). Given their course of performance, initiated by Lending Club, Mr. Duffy reasonably assumed that Lending Club would continue to withdraw payments automatically, as it had done before. In failing to withdraw the last three payments without telling Mr. Duffy, he argues, Lending Club manufactured a breach, causing the debt to revert. Lending Club could then sell that reverted debt to Credit Corp for more than it presumably could have under the settlement agreement.

This a plausible tale. At this stage the Court must view the facts in the light most favorable to Mr. Duffy. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). And Mr. Duffy has pled "enough factual matter (taken as true) to suggest that a [modification to the settlement] agreement was made" and that Credit Corp remains bound by the settlement agreement. *Twombly*, 550 U.S. at 556. His claim should thus proceed to discovery.

## B. Mr. Duffy's claim is not barred by the statute of limitations

Credit Corp also claims that Mr. Duffy's claim is time barred. Under the FDCPA, claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C.

§ 1692k(d). According to Credit Corp, the violation occurred when Lending Club did not withdraw the final three payments, the last of which was supposed to be in February 2020. If so, the one-year deadline to file suit fell in February 2021. Mr. Duffy did not file this suit until seven months later, in September 2021. Hence, Credit Corp reasons, Mr. Duffy's claim is too late.

This argument misunderstands the claimed violation. Mr. Duffy has sued Credit Corp for Credit Corp's failure to respect the settlement agreement, *not* for Lending Club's failure to automatically withdraw his final payments. Though the last payment was due in February 2020, Lending Club did not sell Mr. Duffy's debt to Credit Corp until April 2021, over a year later. The next month, May 2021, Credit Corp sent Mr. Duffy a letter telling him that he owed it $8,349.12 plus interest. That letter—not Lending Club's manufactured breach—is what Mr. Duffy says violated the FDCPA. His complaint, filed in September 2021, four months after Credit Corp sent the letter, fell well within the statute of limitations.

**II.     Mr. Duffy has stated a claim under the Fair Credit Extension Uniformity Act**

Pennsylvania's Fair Credit Extension Uniformity Act (FCEUA), like its federal counterpart, prohibits unfair or deceptive debt collection practices. In fact, the FCEUA incorporates the FDCPA in its entirety. If a debt collector has violated the federal debt collection law, it has also violated the state law. 73 Pa. Stat. § 2270.4. Because Mr. Duffy has stated a plausible FDCPA claim, he posits, he has likewise made out a plausible FCEUA claim.

Not so fast, Credit Corp says, for Mr. Duffy has not pled recoverable damages. The FCEUA does not directly provide for remedies. *Levy-Tatum v. Navient & Sallie Mae Bank*, No. 15-cv-3794, 2016 WL 75231, at *9 (E.D. Pa. Jan. 7, 2016). Instead, the statute directs that a violation of the FCEUA is also a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL). *See* 73 Pa. Stat. § 2270.5(a). The UTPCPL, in turn, awards actual damages (or $100 in statutory damages) if the debtor suffered "any ascertainable loss of money or property,

real or personal." 73 Pa. Stat. § 201-9.2. Connecting these dots, to make out a claim under the FCEUA, the debtor must plausibly plead some sort of economic loss from the debtor's actions. *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015); *accord Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 182 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019).

Mr. Duffy has plausibly pled that he faces a claimed debt of $8,349.12. Credit Corp could sue to collect this debt at any time. Indeed, Credit Corp has already sent at least one collection letter, which sparked the present suit. Just as a lien on a property could count as a "concrete" economic loss, *Kaymark*, 783 F.3d at 181, so too can Mr. Duffy's looming debt, *see Grimes v. Enterprise Leasing Co. of Phila., LLC*, 66 A.3d 330, 339 (Pa. Super. Ct. 2013), *rev'd on other grounds* 105 A.3d 1188, 1193 (Pa. 2014) (per curiam).

To be sure, as Credit Corp points out, other courts in this district have held that an "outstanding liability" cannot count as a loss under the UTPCPL, and by extension the FCEUA, because the debtor has not yet paid anything and so not actually lost money. *See, e.g., Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 & n.16 (E.D. Pa. 2013). With due collegial respect, this Court concludes that such a narrow reading of "ascertainable loss"—requiring that the debtor have paid off the debt before suing under the FCEUA—guts the statute.

The FCEUA, just like the FDCPA, prohibits all kinds of debt collection practices that precede the actual payment of the debt. For example, debt collectors and creditors cannot harass debtors with repeated communications, nor can they include markings on envelopes to indicate that the enclosed letter seeks to collect a debt. 73 Pa. Stat. § 2270.4(a), (b)(1)(iii), (v); 15 U.S.C. §§ 1692d(5), 1692f(8). These unfair practices are forbidden even if the debt collector does not actually collect the debt as a result of the practice. *See Salvati v. Deutsche Bank Nat'l Tr. Co.,*

*N.A.*, 575 F. App'x 49, 56 (3d Cir. 2014). Mr. Duffy is "not required … to sit idly by and wait for [Credit Corp] to collect [the debt] in order to assert [his] rights" under the FCEUA. *Grimes*, 66 A.3d at 339.

Faced with an asserted debt, Mr. Duffy has suffered an ascertainable loss for which he may sue. His claim under the FCEUA survives.[2]

### III.   Mr. Duffy has not stated a claim under the Unfair Trade Practices and Consumer Protection Law

Mr. Duffy also attempts to brings a standalone claim under the Unfair Trade Practices and Consumer Protection Law, asserting that Credit Corp has engaged in "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" by incorrectly telling him that he owed $8,349.12. 73 Pa. Stat. § 201-2(4)(xxi). Even if Credit Corp's letter was confusing to Mr. Duffy, that is not enough for a standalone claim under the UTPCPL.

Coercive debt collection practices technically count as violations of the UTPCPL, but only because the FCEUA incorporates the UTPCPL's remedies. *See* 73 Pa. Stat. § 2270.5(a). That incorporation, however, does not mean that all deceptive debt collection practices automatically count as standalone violations of the UTPCPL.

The UTPCPL protects against fraudulent sales practices that trick a customer into purchasing a product or service. *See* 73 Pa. Stat. § 201-2(4). To plausibly plead a standalone violation, the consumer must have "purchase[d] or lease[d] goods or services … and *thereby* suffer[ed] … *as a result of*" the defendant's unfair trade practices. 73 Pa. Stat. § 201-9.2 (emphasis added). In the debt collection context, that means that for a standalone claim under the UTPCPL a

---

[2]    This FCEUA claim may not benefit Mr. Duffy much in the long run, however, for Mr. Duffy cannot recover under both the FCEUA and the FDCPA. *See* 73 Pa. Stat. § 2270.5(c). He may proceed under both claims now, but Mr. Duffy must eventually "choose[] one of the two statutory remedies under which to seek damages." *Albanese v. Portnoff Law Assocs., Ltd.*, 301 F. Supp. 2d 389, 391 n.4 (E.D. Pa. 2004).

debtor must plead that a lender engaged in deceptive conduct in *issuing* the loan, not that a debt collector engaged in deceptive conduct in *enforcing* the loan. This is similar to how the UTPCPL covers "the *sale* of an insurance policy" but not "the *handling* of insurance claims." *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020).

Credit Corp has tried to collect on Mr. Duffy's loan, but it admittedly had no role in making the loan or modifying it. If Mr. Duffy did "suffer[ ]" based on his taking out the loan and forming the settlement agreement, such loss was not the "result of" Credit Corp's actions. 73 Pa. Stat. § 201-9.2. The Court thus dismisses Mr. Duffy's standalone UTPCPL claim.

## CONCLUSION

Because Mr. Duffy has plausibly pled that his debt is for $1,190.49 and not $8,349.21, his FDCPA and FCEUA claims survive; his standalone UTPCPL claim does not. The Court grants Credit Corp's motion to dismiss in part and denies it in part. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

8